UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASI ALFORD,

        Plaintiff,        Civil Action No. 18-10466
                                Honorable Paul D. Borman
v.                             Magistrate Judge Elizabeth A. Stafford

D. BUTLER, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
CHRISTINE WILSON DE MERINA'S MOTION FOR SUMMARY
JUDGMENT BASED ON FAILURE
TO EXHAUST ADMINISTRATIVE REMEDIES [ECF NO. 14]**

**I.    Introduction**

Plaintiff Kasi Alford, a prisoner proceeding *pro se*, sues employees of the Michigan Department of Corrections (MDOC) under 42 U.S.C. § 1983, alleging that they violated her constitutional rights during her incarceration at Women's Huron Valley Correctional Facility (WHV) in Ypsilanti, Michigan. [ECF No. 1]. Defendant Christine Wilson De Merina (Wilson) moves for summary judgment, contending that Alford failed to exhaust her administrative remedies. [ECF No. 14]. The record shows that Alford failed to timely file the Step III appeal, so the Court **RECOMMENDS** that Wilson's motion for summary judgment be **GRANTED**.

## II.  Background

In February 2017, Alford filed a Step I grievance against Wilson, a therapist, for alleged discrimination and mental abuse. [ECF No. 14-4, PageID.207]. Alford claimed that Wilson had kept her locked in her room even though she had no disciplinary tickets and was not on loss of privilege (LOP) status. [*Id.*]. The grievance was rejected as a non-grievable policy issue. [*Id.*, PageID.202-03, 207, 210].

On April 25, 2017, Alford received her Step II appeal form from defendants. [*Id.*, PageID.203]. According to Alford, she filed her Step II appeal on May 9, 2017, ten days after receiving the form, although the grievance coordinator marked it received on May 10, 2017. [ECF No. 1; ECF No. 14-4, PageID.203, 209; ECF No.15, PageID.230]. Alford alleged in her Step II appeal that her Step I issue had not been resolved in that she continued to be locked up and away from her peers despite having no tickets and not being on LOP status, which amounted to retaliation and harassment. [ECF No. 14-4, PageID.209]. Alford's Step II appeal was rejected as "untimely" because the grievance coordinator should have received it on May 9 instead of May 10. [*Id.*, PageID.210]. This response was returned to Alford on May 31, 2017. [*Id.*, PageID.209].

2

Grievance Section Manager Richard D. Russell stated in an affidavit that he received Alford's Step III appeal form on August 9, 2017, but that he returned "all the materials" because Alford failed to include the Step I and Step II documents as required. [ECF No. 14-3, PageID.197]. Russell states that a cover letter instructed Alford to resubmit her Step III appeal with all required documents. [*Id.*; ECF No. 14-2, PageID.119]. According to Russell, Alford never returned her Step III appeal and there is no further record of communication with her about this grievance. [*Id.*].

In her complaint, Alford denied that she ever received defendants' response to her Step III appeal. [ECF No. 1, PageID.10]. She reiterates this in response to Wilson's motion for summary judgment, emphasizing that she is familiar with the grievance process, that she did not have reason to exclude the required documentation, and that the WHV mailroom is infamous for losing and not delivering mail to prisoners. [ECF No. 15, PageID.230].

### III. <u>Analysis</u>

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's

function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so

4

*properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (citation omitted) (emphasis in original). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement. *Id.*; *see also Woodford,* 548 U.S. at 97. Before a civil rights claim based on a grievance may be dismissed for failure to exhaust properly, prison officials must "clearly reject[] a grievance for a reason *explicitly* set forth in the applicable grievance procedure." *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *3 (W.D. Mich. Mar. 30, 2010) (emphasis added).

When feasible, the Court will decide exhaustion disputes before addressing the merits of the claims. *See Albino v. Baca,* 747 F.3d 1162, 1170 (9th Cir. 2014). A dismissal for failure to exhaust administrative remedies, even when decided on summary judgment, is without prejudice. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

5

**B.**

The grievance procedure at issue is MDOC PD 03.02.130, which sets forth a three-step procedure prisoners must follow to complete the administrative review process and properly exhaust grievances. [ECF No. 14-6]. The policy requires a prisoner to try to informally resolve the problem with the allegedly offending staff, and then file a Step I grievance about any unresolved issues with a grievance coordinator. [ECF No. 14-6, PageID.216-217, ¶¶ P and R]. The prisoner may then file a Step II grievance appeal within ten business days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due. [*Id.*, PageID.218, ¶ BB]. The same schedule applies to a Step III appeal—it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due. [*Id.*, PageID.219, ¶ FF]. Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before filing suit.

When completing a grievance, prisoners must concisely state the issues they are alleging and include the "[d]ates, times, places, and names of all those involved in the issue being grieved." [*Id.*, PageID.216-217, ¶ R]. "Grievances and grievance appeals at all steps shall be considered filed on

6

the date sent by the grievant." [*Id.*, PageID.217, ¶ S]. A grievance may be rejected at any step if it is "filed in an untimely manner." [*Id.*, PageID.215, ¶ G(4)]. But grievances may not be rejected for a prisoner's failure to include documents. [*Id.*, PageID.215, ¶ H].

### *1. A reasonable jury may find that Alford properly exhausted her Step I administrative remedy.*

MDOC PD 03.02.130 ¶ F(1) states in part that "[a] grievant may not grieve the content of policy or procedure except as it was specifically applied to grievant." [ECF No.14-6, PageID.214, (emphasis in original)]. Wilson contends that Alford's Step I grievance was rejected because she was seeking to grieve the content of policy. [ECF No. 14-4, PageID.202-03, 210]. But Alford did not grieve the content of policy or procedures at Step I; she stated that Wilson kept her locked up in her room when she did not have tickets and was not on LOP. [ECF No. 14-4, PageID.207]. Alford wrote that Wilson did not have any "type of reasons to keep me locked in my room," suggesting that Alford believed that Wilson's actions were contrary to MDOC policy. [*Id.*]. And ¶F(1) allowed Alford to grieve a policy or procedure as it "specifically applied" to her. [ECF No.14-6, PageID.214].

Wilson does not explain how Alford's complaint that she was locked in her room with no reason amounted to a grievance about the content of policy or procedure. [ECF No. 14, PageID.100, 107]. Nor does Wilson

7

articulate why Alford's grievances were rejected even though she complained about treatment that was specific to her. [*Id.*]. The Court finds that ¶ F(1) does not apply to Alford's grievance and that a reasonable jury may conclude that the rejection of her Step I grievance was improper. *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016) (to carry summary-judgment burden, defendants must "show that every reasonable jury would think the rejections were proper.").

### 2. A genuine issue of material facts exists as to whether Alford's Step II appeal was untimely.

Grievances and grievance appeals are "considered filed on the date *sent* by the grievant." [ECF No. 14-6, PageID.217, ¶ S (emphasis added)]. Paragraph BB, which addresses the timeliness of Step II appeals, also focuses on the date that the grievance appeals are *sent*:

> To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and *send* the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions.

[*Id.*, PageID.218, ¶ BB (emphasis added)].

Alford's Step I form was returned to her on March 1, 2017. [ECF No. 14-4, PageID.203, 207]. But according to MDOC's grievance coordinator,

8

Alford did not receive the Step II appeal form until April 25, 2017, which meant that she had to file her appeal by May 9, 2017. [*Id.*, PageID.203, 209]. Wilson argues that Alford's Step II appeal was received until May 10, 2017, making it untimely. [*Id.*, PageID.203, 209]. But a reasonable jury could disagree. Under ¶ S, if Alford's Step II appeal was sent on May 9, 2017, it is considered filed on that date. [ECF No. 14-6, PageID.217]. Alford signed her Step II grievance on May 9, 2017, and she contends in her response to Wilson's motion that she filed her Step II form on that date. [ECF No. 14-4, PageID.209; ECF No. 15, PageID.229]. For these reasons, there is a genuine issue of material fact about whether the Step II grievance form was filed untimely.

### 3. No genuine issue of material fact exists as to whether Alford properly filed a Step III appeal.

Wilson argues that Alford failed to properly exhaust Step III because she did not include her Step I and II documentation when she filed her Step III appeal. [ECF No. 14-2, PageID.119; ECF No. 14-3, PageID.197]. But Wilson provides no authority stating that Alford had to include the Step I and Step II documents with her Step III appeal. The applicable MDOC Policy Directive states only that the prisoner must submit a Step III grievance form and references no other necessary documents. [ECF No. 14-6, PageID.219, ¶ FF].

9

Even so, there is no genuine dispute that Alford's Step III submission was untimely. A prisoner may file a Step III grievance within ten business days after receiving the Step II response. [ECF No. 14-6, PageID.219, ¶ FF]. Wilson asserts that Alford tried to file her Step III appeal on August 9, 2017, more than two months after the May 26, 2017 rejection of her Step II appeal. [ECF No. 14, PageID.108; ECF No. 14-2, PageID.119; ECF No. 14-3, PageID.198; ECF No. 14-4, PageID.210]. In her complaint and in response to Wilson's motion, Alford stated that she filed a Step III appeal, but said nothing about the date of filing. [ECF No. 15, PageID.229-30]. Alford has therefore failed to set forth specific facts showing a genuine issue for trial about whether she fully exhausted the grievance against Wilson. *Celotex,* 477 U.S. at 324.

### IV. Conclusion

The Court **RECOMMENDS** that Wilson's motion for summary judgment **[ECF No. 14]** be **GRANTED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: March 20, 2019

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

10

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

11

limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2019.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager
